IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES J. JACKSON,** | ) | |
| Petitioner, | ) | Civil Action No. 11-106 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| **MICHAEL HARLOW, <u>et al.</u>,** | ) | |
| Respondents. | ) | |

### OPINION AND ORDER[1]

Presently before the Court is a petition for a writ of habeas corpus filed by James J. Jackson [ECF No. 3]. He is challenging the judgment of sentence imposed upon him by the Court of Common Pleas of Erie County on March 6, 2008. For the reasons set forth below, his petition is denied and a certificate of appealability is denied.

### I.

**A.     Relevant Background**[2]

On January 16, 2008, an Erie County jury found Petitioner guilty of two counts of simple assault, and one count each of recklessly endangering another person and possession of an instrument of crime. Assistant Public Defender David J. Ungerman, Esquire, was Petitioner's trial attorney.

The Superior Court of Pennsylvania summarized the evidence introduced at Petitioner's trial as follows:

> On July 5, 2007, at approximately 2:00 p.m., Amanda Wiseman ("Wiseman") was driving her friend, Marcus Gray ("Gray"), to work. In the backseat of the car were Wiseman's two daughters, three year old S.O. and 15 month old J.O. As Wiseman approached the intersection of 4th and Cascade Streets, Gray noticed [Petitioner] walking

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2]     Respondents have submitted the Common Pleas Court's file and relevant transcripts. The documents contained in the Common Pleas Court's file are indexed and numbered 1 through 66. They shall be cited to as "CP Dkt. No. __ ."

1

down the street, and stated to Wiseman, "[T]hat's the guy, pull over[.]" N.T. January 16, 2008, p. 8. Gray believed that [Petitioner] had been involved in a prior burglary at Gray's home. After Wiseman obliged, Gray got out of the vehicle and approached [Petitioner], who was walking with his girlfriend, Jonda Brown ("Brown"). Gray admitted that he was angry, but testified that he only wanted to confront appellant and call the police.

The two men began arguing, and took a "fighting stance." Id., p. 9. At some point, Gray began walking back to the car, and [Petitioner] began searching for something in Brown's purse. Gray testified that [Petitioner] retrieved a knife or blade from the purse and began to pursue him. A third party witness, Marciana Jurewicz ("Jurewicz"), who watched the fight unfold from her bedroom window, testified that she saw [Petitioner] holding "some type of blades in his fists." Id., p. 62. Both [Petitioner] and Brown, however, testified that [Petitioner] was looking for a cell phone, and that Gray was armed with a knife. Gray started to walk back to the car when [Petitioner] began running after him. Gray then dove into the backseat of Wiseman's car, in between the car seats holding Wiseman's daughters. Before Wiseman could drive away, [Petitioner] reached in through the window of the car and made a swiping motion. Shortly after the car drove away, Gray told Wiseman that [Petitioner] "got" her youngest daughter, J.O. J.O. had in fact sustained a four centimeter cut below her left eye that required stitches and left a scar.

[Petitioner] was subsequently arrested and charged with aggravated assault, simple assault (two counts), recklessly endangering another person (two counts), and possession of an instrument of crime. After a two day jury trial, [Petitioner] was found guilty of two counts of simple assault and one count each of recklessly endangering another person and possession of an instrument of crime.[2] On March 6, 2008, [Petitioner] was sentenced to an aggregate term of imprisonment of from six years to twelve years. He filed a motion for reconsideration of sentence, which was promptly denied by the trial court.

[2] The trial court dismissed the charge of aggravated assault at the conclusion of the evidence, and the jury returned a not guilty verdict on the charge or recklessly endangering another person (Marcus Gray).

(CP Dkt. No. 65, Commonwealth v. Jackson, No. 1654 WDA 2009, slip op. at 1-3 (Pa.Super. Sept. 13, 2010) (bracketed text in original)).

Attorney Ungerman filed a Notice of Appeal to the Superior Court on Petitioner's behalf, but Petitioner filed several motions for new counsel because he contended that Ungerman was ineffective. On May 28, 2008, Ungerman filed a "Statement of Intent to File an *Anders/McClendon* Brief." (CP Dkt. No. 32). He explained that he believed that there were no non-frivolous issues that could be raised on

2

direct appeal. He noted that Petitioner did want to raise complaints about his alleged ineffective assistance, but that such claims had to be raised by another attorney in a subsequent post-conviction proceeding.

Ungerman more specifically explained that Petitioner believed that he was ineffective for failing to object to the "prior bad act" evidence that had been introduced at the trial. That evidence first was first introduced during the Commonwealth's case-in-chief, in an effort to explain why Gray had initiated the confrontation with Petitioner:

> [Gray]: Well, … I happened to look up and see him. And I said, Amanda that's the guy who broke in my house, turn around….
> - - -
> I said, this is the guy who broke in my house[.]
> - - -
>
> [Prosecutor]: At some point you saw the defendant?
>
> [Gray]: Yes.
>
> [Prosecutor]: And you suspected that he was involved in a burglary?
>
> [Gray]: Yes.
>
> > Mr. Ungerman: Said he broke into his house, Judge, didn't say a burglary.
> >
> > The Court: That's correct.
>
> [Prosecutor]: All right. You suspected he had broken into your house. Is that why – and you asked Miss Wiseman to stop the vehicle?
>
> [Gray]: Yes.
>
> [Prosecutor]: Why did you ask her to stop the car?
>
> [Gray]: Well, the reason being is ever since that happened I hadn't seen him or anything. You know, I filed a report with the police. They came to my house and everything.
>
> [Prosecutor]: What was you intentions with regard to the defendant Mr. Jackson? What did you want to do? Why did you … ask her to stop?
>
> [Gray]: I asked her to stop so I could call the police so I could get a hold of him. They said they didn't –

> [Prosecutor]: Mr. Gray, time out. Don't tell us what the police told you. If you would please, just answer my question, tell me why you got out of the car. What was your purpose in getting out of your car?
>
> [Gray]: Because I wanted something to be done about the things that were stolen from my house.
>
> [Prosecutor]: Did you want to talk to the defendant?
>
> [Gray]: Yes. I wanted – well, I – I really didn't have too much to say. I wanted the police to talk to him. Yeah, we had words, yes.

(1/15/08 Trial Tr. at 23-26).

> On cross-examination, Ungerman questioned Gray further about his allegations:
>
> [Ungerman]: You indicated that you thought my client had taken something from you, and you talked to your cousin, who was on the police force, about it?
>
> [Gray]: Correct.
>   - - -
> [Ungerman]: … has my client ever been charged with anything?
>
> [Gray]: No. Actually I don't even know whatever happened to the case.
>
> [Ungerman]: There is no charges filed. The police determined that my client – there is no evidence existing showing my client committed anything?
>
>> [Prosecutor]: Objection. He can't testify –
>>
>> The Court: Sustained. He's indicated he doesn't know anything about the case, Mr. Ungerman. As far as his knowledge, that's it.
>
> [Ungerman]: Who is your cousin on the police force you talked with [about the items stolen from your home]?
>
> [Gray]: Chuck Bailey. He actually didn't know anything about the case.
>
> [Ungerman]: When you got out of the car were you angry at my client?
>
> [Ungerman]: Yeah, yeah, I was angry.

(Id. at 44-45).

Ungerman explored the issue again during the cross-examination of Detective Edward Tuchooski. He asked the detective to read into evidence Jonda Brown's statement to police, which she

4

had given five days after the assaults. In that statement, Brown told the detective that Petitioner and Gray "were fighting about … drugs…. [Gray had] ripped off [Petitioner] and then [Petitioner] ripped off [Gray] for a pound of pot." (1/16/08 Trial Tr. at 165).

Ungerman explained in his "Statement of Intent to File an *Anders/McClendon* Brief" why he did not object to the prior bad act evidence that the Commonwealth had introduced:

> Because of trial tactics, namely, that in order to show that the alleged victim [Gray] was extremely angry at the Defendant and was in fact the aggressor the Defense wanted to portray the alleged victim as the aggressor motivated by his mistaken belief in what he thought the Defendant had done. Under cross examination of Commonwealth witnesses it was clear that there was no basis in fact upon which the alleged victim could base this belief, as a matter of trial tactics it was believed the overall effect would be to show the alleged victim was the aggressor and that the credibility of the alleged victim would thereby be tarnished, all of which were facts explained to the jury.

(CP Dkt. No. 32 at 2).

In response to Ungerman's filing, Petitioner requested that the trial court appoint him new counsel. Nicole Denise Sloane, Esquire, subsequently entered her appearance on his behalf, replacing Ungerman. (CP Dkt. No. 34).

Petitioner's direct appeal focused solely on his contention that the trial court erred by denying his motion to proceed *pro se* without first conducting a colloquy. On April 15, 2009, the Superior Court rejected his claim and affirmed his judgment of sentence. (CP Dkt. No. 38, Commonwealth v. Jackson, No. 698 WDA 2008 (Pa.Super. Apr. 15, 2009)).

On June 16, 2009, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.* (CP Dkt. No. 39). The court appointed William J. Hathaway, Esquire, to represent him. Hathaway subsequently filed a petition for leave to withdraw as counsel and an accompanying "no-merit" letter pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa. 1988). (CP Dkt. No. 44).

5

On August 4, 2009, the PCRA Court granted Hathaway's petition for leave to withdraw. (CP Dkt. No. 45). On that same day, it issued an Opinion and Notice of Intent to Dismiss PCRA Without a Hearing Pursuant to Pa.R.Crim.P. 907(1). On September 11, 2009, after considering Petitioner's response to the Notice of Intent to Dismiss, the court issued an Order in which it denied the PCRA motion and also denied Petitioner's request for appointment of new counsel. (CP Dkt. No. 49).

In his subsequent appeal to the Superior Court, Petitioner raised, *inter alia*, the same two claims that he now raises in the habeas petition that he has filed with this Court. First, he contended that Ungerman was ineffective for failing to request that the trial court give a cautionary instruction regarding how it was to consider the prior bad act evidence that had been introduced, and that his direct appeal counsel (Sloane) was ineffective for failing to litigate that claim. Second, he argued that Hathaway was ineffective as PCRA counsel, that the PCRA Court erred in permitting Hathaway to withdraw because his "no-merit" letter did not comply with the law, and that the PCRA Court also erred in denying his post-conviction motion without a hearing. (CP Dkt. Nos. 51, 56).

On September 13, 2010, the Superior Court issued a Memorandum in which it affirmed the PCRA Court's decision. (CP Dkt. No. 65, Jackson, No. 1654 WDA 2009, slip op. at 11-12, 14). The Pennsylvania Supreme Court denied a petition for allowance of appeal on April 18, 2011.

Following the conclusion of his PCRA proceeding, Petitioner filed with this Court his petition for a writ of habeas corpus. [ECF No. 3]. He raises the same two claims that he raised to the Superior Court in his PCRA appeal, which are set forth above. [See Memorandum of Law In Support of Habeas Petition, ECF No. 3 at 13-34]. Respondents have filed an Answer [ECF No. 11], to which Petitioner has filed a Reply [ECF No. 13].

**B.** **Discussion**

   **(1)** **Claim 1 – Was Ungerman Ineffective For Failing to Request That a Cautionary Instruction Be Given?**

   **(a)** **Standard of Review**

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). In addition, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).

As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
> 
> (1) resulted in a decision that was *contrary to,[3] or involved an unreasonable application of,[4] clearly established Federal law, as determined by the Supreme Court of the United States*; or

---

[3] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

[4] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 407).

7

>    (2) resulted in a decision that was based on an *unreasonable determination
>    of the facts in light of the evidence presented in the State court proceeding*.

(Emphasis added).

The Supreme Court has stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id., at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." Id., at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

Renico v. Lett, — U.S. — , 130 S.Ct. 1855, 1862 (2010). See also Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings…. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.").

If the state court has not "adjudicated a claim on the merits," § 2254(d)'s standard of review does not apply. Under such circumstances, the federal habeas court applies a *de novo* review to the claim. See, e.g., Thomas v. Horn, 570 F.3d 105, 124 (3d Cir. 2009).

### (b) Discussion

The "clearly established Federal law" for AEDPA purposes in which to analyze this claim of ineffective assistance is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under <u>Strickland</u>, Petitioner must show that Ungerman's representation fell below an objective standard of reasonableness. 466 U.S. at 688; <u>see</u> also <u>Williams</u>, 529 U.S. at 390-91. The law presumes that Ungerman was effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

<u>Id.</u> at 689 (internal citations and quotations omitted). The Court of Appeals for the Third Circuit has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997) (quoting <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)).

<u>Strickland</u> also requires that Petitioner demonstrate that he was prejudiced by Ungerman's alleged deficient performance. This requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial or his appellate] proceeding would have been different." <u>Id.</u> at 694. As the Third Circuit Court recently explained:

> [The petitioner] "need not show that counsel's deficient performance 'more likely than not altered the outcome of the case' – rather, he must show only 'a probability sufficient to undermine confidence in the outcome.'" <u>Jacobs v. Horn</u>, 395 F.3d 92, 105 (3d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 693-94). On the other hand, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."

> Harrington, 131 S.Ct. at 787 (citing Strickland, 466 U.S. at 693). Counsel's errors must be "so serious as to deprive the defendant of a fair trial." Id. at 787-88 (citing Strickland, 466 U.S. at 687). *The likelihood of a different result must be substantial, not just conceivable*. Id.

Brown v. Wenerowicz, 663 F.3d 619, 630 (3d Cir. 2011) (emphasis added).

The Superior Court applied the correct legal standard when it evaluated this claim. (CP Dkt. No. 65, Jackson, 1654 WDA 2009, slip op. at 6 (citing Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard)). Therefore, the Superior Court's adjudication passes federal habeas review under the "contrary to" clause of § 2254(d)(1). See, e.g., Williams, 529 U.S. at 406.

The next question for the Court is whether the Superior Court's adjudication was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). In denying this claim, the Superior Court first noted that although "evidence of a defendant's prior bad acts is not admissible at trial solely to demonstrate bad character or propensity to commit criminal acts," (CP Dkt. No. 65, Jackson, No. 1654 WDA 2009, slip op. at 10 (citing, *inter alia*, Pa.R.E. 404(b)(1)), such evidence may be admitted "where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development." Id. (quoting Commonwealth v. Powell, 956 A.2d 406, 419 (2008)). The Superior Court then determined that:

> [T]he testimony regarding the purported break-in of Gray's home was admissible to demonstrate the history of the animosity between Gray and [Petitioner]. Although it was never proven, nor even implied, that [Petitioner] was the subject of an investigation or charged with a crime in connection with the break-in, the testimony was relevant to demonstrate why Gray was angry at [Petitioner], and why he had instructed Wiseman to stop the car in which they were traveling. In fact, [Ungerman] explained in his Statement of Intent to File an Anders/McClendon Brief, that his trial strategy was to demonstrate that Gray was the clear aggressor… [C]ounsel had a reasonable basis for not objecting to this testimony since the testimony regarding the purported break-in was part of his defense.

10

> [Petitioner] also argues, however, that counsel was ineffective for failing to seek a cautionary instruction regarding the limited purpose for which the testimony regarding the break-in was admitted. Since evidence of prior bad acts has the potential for misleading a jury, it must, in most cases, be accompanied by a cautionary instruction "which fully and carefully explains to the jury the limited purpose for which that evidence has been admitted." Commonwealth v. Page, 965 A.2d 1212, 1221 (Pa.Super. 2009) (citations omitted). While counsel's failure to seek a cautionary instruction here may have arguable merit, [Petitioner] has failed to demonstrate that counsel had no reasonable basis for his inaction. See Commonwealth v. Rainey, 928 A.2d 215, 224 (Pa. 2007) ("A claim of ineffectiveness may be denied by showing that the petitioner's evidence fails to meet any of [the ineffectiveness] prongs.") (emphasis supplied). Indeed, as counsel explained in his Statement of Intent to File an Anders/McClendon Brief, he believed that the testimony, as a whole, indicated that there was no persuasive evidence that [Petitioner] had, indeed, broken into Gray's home. Moreover, since counsel's trial strategy was to demonstrate that Gray was angry at [Petitioner] and was the aggressor in the incident that wounded J.O., the possible occurrence of a burglary provided a consistent motive for Gray's anger.[8] See generally, N.T. January 16, 2008, p. 165 (police statement of Brown demonstrating animosity between the parties since Gray and [Petitioner] has "ripped off" one another). Thus, no relief is warranted on this claim.
>
> [8] There was testimony, from the defense, that Gray had a knife. Moreover, under cross-examination, Gray admitted that he wears rings on his hand. N.T. January 15, 2008, p. 60. The clear implication of this testimony was that Gray accidentally cut the child either when he dove into the car or when he leaned over her to roll up the window and avoid [Petitioner].

(Id. at 11-12).

The Court cannot conclude that the Superior Court's decision to deny this claim was an "unreasonable application of" Strickland or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). In reaching this conclusion, the Court is mindful that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

11

Harrington, 131 S.Ct. at 788 (emphasis added).  Petitioner has not demonstrated that there is no reasonable argument to support the conclusion that Ungerman satisfied Strickland's deferential standard.  Therefore, this Court cannot disturb the Superior Court's decision under AEDPA.

      The Court further concludes that this claim must be denied because Petitioner has not demonstrated that he was prejudiced by Ungerman's failure to request that a cautionary instruction be given at his trial.[5]  The evidence at issue assisted his defense, as Ungerman strategically used it to show that Gray was the aggressor in the confrontation with Petitioner.  And, importantly, after establishing that point, Ungerman was able to get Gray to admit during cross-examination that Petitioner had never been charged with stealing anything from his home.  Ungerman then introduced evidence (through Jonda Brown's statement) that Gray may have stolen drugs from Petitioner.  (1/16/08 Trial Tr. at 165).  Thus, the jury was presented with information that both Gray and Petitioner may have been involved "prior bad acts."  That the jury ultimately credited Gray's version of events likely can be attributed to the testimony provided by Marciana Jurewicz, the witness who had observed the fight between Gray and Petitioner from the second story window of her home.  She did not know any of the people involved in the incident, and her testimony corroborated Gray's.  Jurewicz stated that she saw Petitioner put his arm through the window of Wiseman's car and that "he definitely had some type of blades in his fist … it looked like he might have had his fingers through holes because he hand was in the fist.  His hand was in a fist and the blades were coming out on top."  (1/16/08 Trial Tr. at 61-62).  For all of these reasons,

---

[5]    Because the Superior Court found Ungerman's representation adequate, it did not reach the issue of prejudice.  Therefore, this Court will not apply § 2254(d)'s deferential standard of review to the prejudice analysis of this claim and will instead examine this component of Strickland de novo.  Wiggins v. Smith, 539 U.S. 510, 534 (2003).  But see McBride v. Superintendent, 687 F.3d 92, 100 n.10 (3d Cir. 2012) (observing that "[i]n holding that an unexplained state court decision must be accorded AEDPA's deference, Richter observed that '§ 2254(d) applies when a 'claim,' not a component of one has been adjudicated,' regardless of 'whether or not the state court reveals which of the elements in a multipart claim it found insufficient.' 131 S.Ct. at 784.  That observation arguably undermines the principle from Wiggins and its progeny that instructs that *de novo* review should apply to a particular prong of Strickland 'when neither of the state courts below reached [that particular prong.]' Wiggins, 539 U.S. at 534.") (bracketed text in McBride).

Petitioner has not established "that there is a reasonable probability" that, had a cautionary instruction been given, the result of his trial would have been different. Strickland, 466 U.S. at 694.

In conclusion, Petitioner has failed to demonstrate that the Superior Court's adjudication of this claim was "contrary to, or involved an unreasonable application of" Strickland or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). He also has failed to show that he was prejudiced by Ungerman's alleged deficient representation. According, Petitioner's first claim is denied.[6]

**(2)    PCRA Errors**

Petitioner argues that Hathaway provided him with ineffective assistance as PCRA counsel. This claim must be denied because he did not have a federal constitutional right to counsel during his state post-conviction proceeding, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), and, therefore, cannot receive habeas relief on a claim that his PCRA counsel were ineffective.[7] 28 U.S.C. §2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254.")[8]

---

[6]    Petitioner also contends that Sloane, who represented him in his direct appeal, provided him with deficient representation because she did not argue in that appeal that Ungerman had been ineffective for failing to request a cautionary instruction. This claim fails because under Pennsylvania law, ineffective assistance of counsel claims must be raised on collateral review. Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002).

[7]    Pennsylvania Rule of Criminal Procedure 904 mandates that a PCRA petitioner has a right to counsel on the first PCRA motion, and inherent in that right is a right under state law to effective assistance of counsel. To date, the right to effective assistance of PCRA counsel is afforded by state rule only. R. Wasserbly 16C Pennsylvania Criminal Practice § 34:14 n.11 (2005 & Supp. 2011) (collecting cases); Commonwealth v. Ford, 44 A.3d 1190, 1199 (Pa. Super. 2012).

[8]    The Supreme Court recently decided Martinez v. Ryan, — U.S. —, 132 S.Ct. 1309 (2012). It held for the first time that in states like Pennsylvania, where state law requires that claims of ineffective assistance of trial counsel be raised in an initial-review collateral proceeding (such as the PCRA), a petitioner may be able to establish "cause" sufficient to overcome a procedural default of "a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 132 S.Ct. at 1321. Importantly, the Supreme Court based its decision on what it determined to be an equitable right to seek relief from a procedural default in a federal habeas matter. It did not hold that a petitioner has a constitutional right to counsel in initial-review collateral proceedings such as the PCRA. Id. at 1313-21.

Petitioner also argues that the PCRA Court erred in permitting Hathaway to withdraw as his counsel because his "no-merit" letter did not comply with the law, and that it should not have denied his post-conviction motion without a hearing. These claims also are not cognizable in federal habeas. As the Court of Appeals for the Third Circuit has explained:

> The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. *Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.*

Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis added); see also Lambert, 387 F.3d at 247 ("[A]lleged errors in collateral proceedings are not a proper basis for habeas relief from the original conviction.").

## C.     **Certificate of Appealability**

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied. Accordingly, a certificate of appealability is denied.

**II.**

For the reasons set forth above, the petition for a writ of habeas corpus is denied and a certificate of appealability is denied.  An appropriate Order follows.


Dated:  November 5, 2012

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES J. JACKSON,** ) | |
| Petitioner, ) | Civil Action No. 11-106 Erie |
| ) | |
| v. ) | |
| ) | Magistrate Judge Susan Paradise Baxter |
| **MICHAEL HARLOW, et al.,** ) | |
| Respondents. ) | |

### ORDER

AND NOW, this __ day of October, 2012;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED and a certificate of appealability is DENIED.  The Clerk of Courts is directed to close this case.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge